# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| POLLY A. RAINEY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 11-125 Erie |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

McLAUGHLIN, SEAN J., District Judge.

## I.　　INTRODUCTION

Polly A. Rainey ("Plaintiff"), commenced the instant action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner"), denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq*. Plaintiff filed her application on October 31, 2007, alleging disability on that date due to problems with her legs and feet, spurs in both heels, polio symptoms, muscle spasms, leg and knee weakness, a pinched nerve in her neck, vertigo and high blood pressure (AR 72; 140-142).[1] Her application was denied and she requested and was granted an administrative hearing before an administrative law judge ("ALJ") (AR 72-79).

Following a hearing held on February 19, 2010 (16-54), the ALJ concluded, in a written decision dated April 6, 2010 that Plaintiff was not entitled to a period of disability or DIB under the Act (AR 60-68). Plaintiff's request for review by the Appeals Council was denied (AR 1-6), rendering the Commissioner's decision final under 42 U.S.C. § 405(g). Plaintiff filed her complaint challenging the ALJ's decision, and presently pending before the Court are the parties'

---

[1] References to the administrative record [ECF No. 4], will be designated by the citation "(AR ___)".

1

cross-motions for summary judgment. For the following reasons, Plaintiff's motion will be denied and the Commissioner's motion will be granted.

## II. BACKGROUND

Plaintiff was 51 years old on the date of the ALJ's decision and has a general equivalency diploma (AR 24; 68). She has past relevant work experience as a cook, personal care attendant and housekeeper (AR 24; 48).

The medical records reveal that Plaintiff was seen by Frederick Tomassi, D.P.M. on March 15, 2005 for complaints of lower leg cramping and heel pain (AR 240). Plaintiff reported a history of polio as a child (AR 240). Dr. Tomassi diagnosed Plaintiff with atypical plantar fasciitis, prescribed arch supports, and prescribed Valium for her complaints of leg cramping (AR 240). On March 21, 2005, an x-ray of Plaintiff's feet revealed the presence of bilateral calcaneal spurs (AR 245).

On April 6, 2005, Plaintiff underwent a treadmill cardiolite EKG stress test which yielded normal results (AR 253-254). Plaintiff was able to exercise to 7 METS and had no significant chest pain (AR 253). An EKG dated April 6, 2005 showed normal sinus rhythm (AR 252-253). An x-ray of Plaintiff's cervical spine dated May 28, 2005 was reported as negative (AR 251).

Plaintiff received routine medical treatment at Elk Valley Medical Center from May 25, 2006 through December 12, 2006 (AR 267-274). These records reflect a past medical history for hypertension, restless legs, plantar fasciitis, and poliomyelitis (AR 267; 269; 271-272). Plaintiff was treated for elevated blood pressure (AR 271; 274); an ear infection (AR 271-273); bronchitis (AR 269-270); thumbnail fungus; and right abdominal pain (AR 267-268).

Plaintiff was evaluated by Wade Shaffer, D.C., on January 19, 2007 for her complaints of neck pain, and she was diagnosed with vertebral subluxation of the C1-2 area with associated muscular hypertonicity (AR 258-259). Dr. Shaffer recommended chiropractic adjustment therapy and stated that Plaintiff's prognosis was "good" (AR 259). Plaintiff underwent chiropractic adjustment therapy from January 26, 2007 through April 4, 2007 (AR 296).

On September 7, 2007, Plaintiff returned to Elk Valley and complained of dizziness, vision changes and nausea after starting atenolol for blood pressure control (AR 262). She

reported that she had been working full-time as a home health aide and was planning to return to school to obtain LPN training (AR 262). Her musculoskeletal examination was normal, and her neurological examination revealed normal reflexes and no motor dysfunction (AR 263). Her blood pressure medication dosage was decreased (AR 263).

On November 13, 2007, Plaintiff complained of chronic foot pain (AR 260). She had no neurological complaints and denied having any fatigue or weakness (AR 261). It was noted that her chronic restless leg issues were controlled with Valium at bedtime (AR 260). She was assessed with *inter alia*, bilateral foot pain, "probably plantar fasciitis" (AR 261).

Plaintiff returned to Elk Valley on January 17, 2008 and was seen by Wes Hilbert, M.D. (AR 332). Plaintiff reported a history of scoliosis and polio (AR 332). She complained of bilateral leg pain, bilateral foot pain exacerbated by standing for long periods of time, and intermittent knee pain (AR 332). She indicated she wore orthotics for her foot pain (AR 332). Plaintiff reported that she was working full-time as a home health aide (AR 332). On physical examination, Dr. Hilbert found her feet were tender on palpation (AR 333). She was assessed with limb pain and calcaneal spurs, and referred to a podiatrist (AR 333). X-rays of Plaintiff's feet dated January 17, 2008 showed no acute fracture or significant degenerative changes, but bilateral plantar calcaneal spurs and mild calcification were seen (AR 335).

On January 28, 2008, Mary Ellen Wyszomierski, M.D., a state agency reviewing physician, reviewed the medical evidence of record and concluded that Plaintiff could occasionally lift twenty pounds, frequently carry ten pounds, stand and/or walk for a total of six hours in an 8-hour workday, sit for about six hours in an 8-hour workday, and was unlimited in pushing and pulling activities (AR 289-295). She further found Plaintiff could occasionally climb, balance, stoop, kneel, crouch and crawl, but should avoid even moderate exposure to hazards such as machinery and heights (AR 291-292). She noted that Plaintiff's self-described daily activities were significantly limited and that she alleged weakness in her arms and legs (AR 294-295). Dr. Wyszomierski observed, however, that Plaintiff's motor examination was normal and she was able to perform light housekeeping and drive (AR 295). She further observed that

although Plaintiff reported using a cane, her recent musculoskeletal examination was normal, her gait was normal, and there was no evidence she required one (AR 295).

On February 26, 2008, Plaintiff returned to Elk Valley and reported that she was working full-time (AR 339). She was to follow-up with a podiatrist for her heel spurs, and her thyroid medication was adjusted (AR 340).

On March 18, 2008, Dr. Hilbert completed a form for the Pennsylvania Department of Public Welfare noting that Plaintiff had hypertension, hypothyroidism, heel spurs, plantar fasciitis and restless leg syndrome (AR 346). He opined that she was "employable", in that her physical and/or mental condition was such that "she [could] work" (AR 346). He based his assessment on Plaintiff's physical examination, a review of her medical records, and diagnostic tests and procedures (AR 346).

On March 25, 2008, Plaintiff reportedly felt better taking synthroid, and Dr. Hilbert found her hypertension and vertigo were controlled with medication (AR 342-343).

On October 28, 2008, presented to Dr. Hilbert for a physical examination for paperwork related to insurance (AR 347). Plaintiff's neurological examination "demonstrated no dysfunction" (AR 348). Dr. Hilbert found her balance, gait, stance and reflexes were all normal (AR 348). On November 18, 2008, Plaintiff reported that she was working full-time, and no new complaints were noted (AR 351). Dr. Hilbert found her hypertension was controlled on her current dosage of medication (AR 352).

Plaintiff returned to Dr. Hilbert on March 4, 2009 and complained of foot and back pain, paresthesia[2] and weakness in her upper extremities bilaterally, paresthesia in both hands, right shoulder and periscapular pain, and weakness in her lower extremities bilaterally, and diffuse myalgia[3] and weakness (AR 358). She reported she was working full-time as a home health aide (AR 359). On physical examination of Plaintiff's cervical spine, Dr. Hilbert found   tenderness on palpation of the paraspinal and suprascapular muscles, and pain was elicited on motion (AR 359). Her cervical spine motion was normal, and no instability or weakness was found (AR

---

[2] Paresthesia is defined as "an abnormal touch sensation, such as burning, prickling, or formication, often in the absence of an external stimulus." *Dorland's Illustrated Medical Dictionary*, 1383 (32nd ed. 2012).
[3] Myalgia is defined as "pain in a muscle or muscles." *Dorland's* at 1214.

359). An examination of Plaintiff's thoracic spine and lumbar spine were normal, and her straight leg raising test was negative (AR 359). Plaintiff's neurological examination revealed no evidence of weakness, her flexion and strength were normal, her reflexes were normal, and no antalgic gait was observed (AR 359). Dr. Hilbert diagnosed Plaintiff with lower back sprain, neck strain and fibromyalgia (AR 360).

On March 4, 2009, x-rays of Plaintiff cervical spine and lumbar spine were negative (AR 364). An MRI of Plaintiff's cervical spine dated April 11, 2009 was also negative (AR 367).

On June 4, 2009, Plaintiff presented to the emergency room with left shoulder discomfort after carrying bags to her house (AR 300). X-rays of her left shoulder were negative and she was diagnosed with left shoulder tendonitis (AR 302; 386).

Plaintiff returned to Elk Valley on April 22, 2009 and reported no changes in her symptoms (AR 384). She complained of fatigue, which Lisa Treusch, M.D., noted was consistent with fibromyalgia (AR 384). Plaintiff further complained of diffuse muscle aches, and claimed she was no longer working because she was unable to perform her job (AR 384). Her musculoskeletal examination was normal, and she was prescribed Elavil (AR 385).

Plaintiff was seen by Allison Mailliard, D.O., at Primary Care Partners on July 9, 2009, and complained of right arm pain (AR 309-311). She reported that she worked as a cook/housekeeper, and acknowledged occasional alcohol and marijuana usage (AR 310). Plaintiff denied any musculoskeletal changes, motor weakness or sensory changes (AR 310). Physical examination revealed that her gait was normal, and she exhibited a decreased range of motion in her right shoulder (AR 310-311). She was diagnosed with hypertension, hypothyroidism and a shoulder injury, and was referred for physical therapy (AR 311). On July 15, 2009, x-rays of Plaintiff's right shoulder revealed no malalignment or acute fracture, minimal if any degenerative changes, and a very small calcification over the superior lateral humeral head (AR 330).

Plaintiff returned to Dr. Mailliard on September 10, 2009 and continued to complain of right shoulder pain (AR 312). She reported that she missed numerous physical therapy appointments due to working part-time and caring for her son (AR 312). On physical

5

examination, Dr. Mailliard found Plaintiff had a normal gait, no pain on palpation of her shoulder, and a normal range of motion (AR 313).  She denied any musculoskeletal changes, motor weakness or sensory changes (AR 313).  She was diagnosed with cannabis abuse and shoulder injury (AR 313).

On October 22, 2009, Plaintiff was seen by Dr. Mailliard and complained of restless leg syndrome and requested a prescription for Valium (AR 315).  She denied any musculoskeletal changes, motor weakness or sensory changes (AR 316).  Dr. Mailliard noted Plaintiff's gait was normal (AR 317).  Plaintiff was diagnosed with hypertension, hypothyroidism, hyperglycemia, and restless leg syndrome (AR 317).  She was prescribed Flexeril and urged to attend physical therapy (AR 318).

Physical therapy treatment notes from November 9, 2009 through January 6, 2010 showed that Plaintiff attended one follow-up visit after her initial evaluation, where she noted improvement in her condition (AR 329).  Plaintiff did not return for further therapy (AR 329).

On January 6, 2010, Theresa Wheeling, M.D., performed nerve conduction studies and an EMG (AR 307-308).  Dr. Wheeling found the results were consistent with bilateral SI radiculopathies and chronic motor changes that "[could] be due to previous polio" (AR 307). She noted however, that due to Plaintiff's age, it was important to be "certain that she [did] not have any other reason to have hyperreflexia"  (AR 307).  She suggested MRI studies to rule out a spinal cord abnormality (AR 307).  Finally, on February 12, 2010, an MRI of Plaintiff's lumbar spine showed mild spondylosis (AR 331).

Plaintiff and Frances Kinley, a vocational expert, testified at the hearing held by the ALJ on February 19, 2010 (AR 16-54).  Plaintiff testified that she worked as a cook, housekeeper and personal care attendant after her alleged disability onset date (AR 25).  Plaintiff stated that she lived with her 14-year-old son and disabled husband (AR 34-35).  At the hearing, Plaintiff claimed an inability to perform substantial gainful activity based upon her contention that she had difficulty sitting, standing and walking for long periods of time (AR 29).  She indicated that suffered from ankle and knee pain, and that her knees "collapsed" at times (AR 29).  Plaintiff testified that she experienced numbness and tingling in her hands causing her to drop things (AR

29-31). She further testified that at times she had no feeling in her arms (AR 29). Plaintiff claimed an inability to walk distances without the help of a cane, and stated that she could only stand and/or sit for a matter of "minutes" before needing to change positions (AR 29-30).

Plaintiff testified to experiencing chest pain and dizziness occurring two to three times a day (AR 32-33). She also stated that she had sharp pains in her temple area occurring eight to ten times a day depending on her activity level, and would sweat profusely five times a day (AR 34). Plaintiff claimed that her thyroid medication caused hot flashes, mood swings, nausea, occasional depression and weight gain (AR 34). Plaintiff testified that she was able to vacuum, shop for groceries with her family, read, and drive her son to school three times a week (AR 35-36). She denied using any drugs other than prescription medication (AR 37).

The vocational expert was asked to assume an individual of the same age, education and work experience as Plaintiff, who was able to lift 10 pounds occasionally and 3 to 5 pounds frequently; sit for 4 hours in a typical workday; and required a sit/stand option with the ability to change positions every 30 minutes (AR 48). The individual could not perform any crouching, crawling or climbing; could perform other postural maneuvers only occasionally; and should not be exposed to heights or dangerous machinery (AR 48). Such individual would further be limited to simple, routine, repetitive tasks; could not perform in a fast-paced production environment; and could use her hands for fingering occasionally (AR 49). The vocational expert testified that such an individual could perform the jobs of an information clerk, cafeteria attendant, night patrol person and a production inspector (AR 50).

Following the hearing, the ALJ issued a written decision finding that Plaintiff was not entitled to a period of disability or DIB within the meaning of the Act (AR 60-68). Her request for an appeal with the Appeals Council was denied, rendering the ALJ's decision the final decision of the Commissioner (AR 1-6). She subsequently filed this action.

### III.    STANDARD OF REVIEW

The Court must affirm the determination of the Commissioner unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence does not mean a large or considerable amount of evidence, but only "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 564-65, 108
S.Ct. 2541, 101 L.Ed.2d 490 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197,
229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)); *see also Richardson v. Parales*, 402 U.S. 389, 401, 91
S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995). It has
been defined as less than a preponderance of evidence but more than a mere scintilla. *See
Richardson*, 402 U.S. at 401; *Jesurum v. Secretary of the United States Dept. of Health and
Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). Additionally, if the ALJ's findings of fact are
supported by substantial evidence, they are conclusive. 42 U.S.C. § 405(g); *Richardson*, 402
U.S. at 390. A district court cannot conduct a *de novo* review of the Commissioner's decision or
re-weigh evidence of record. *Palmer v. Apfel*, 995 F. Supp. 549, 552 (E.D.Pa. 1998); *see also
Monsour Medical Center v. Heckler*, 806 F.2d 1185, 90-91 (3d Cir. 1986) ("even where this
court acting *de novo* might have reached a different conclusion … so long as the agency's
factfinding is supported by substantial evidence, reviewing courts lack power to reverse either
those findings or the reasonable regulatory interpretations that an agency manifests in the course
of making such findings."). To determine whether a finding is supported by substantial
evidence, however, the district court must review the record as a whole. *See* 5 U.S.C. § 706.

## IV.     DISCUSSION

A person is "disabled" within the meaning of the Social Security Act if he or she is
unable to "engage in any substantial gainful activity by reason of any medically determinable
physical or mental impairment which can be expected to result in death or which has lasted or
can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §
423(d)(1)(A). The Commissioner uses a five-step evaluation process to determine when an
individual meets this definition. 20 C.F.R. § 404.1520. The ALJ must determine: (1) whether
the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant
has a severe impairment or a combination of impairments that is severe; (3) whether the medical
evidence of the claimant's impairment or combination of impairments meets or equals the
criteria listed in 20 C.F.R., Pt. 404, Subpt. P, Appx. 1; (4) whether the claimant's impairments
prevent him from performing his past relevant work; and (5) if the claimant is incapable of

8

performing his past relevant work, whether he can perform any other work which exists in the national economy. 20 C.F.R. § 404.1520(a)(4); *see also Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003). If the claimant is determined to be unable to resume previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given claimant's mental or physical limitations, age, education, and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986).

The ALJ concluded that Plaintiff had the following severe impairments: hypothyroidism; heel spurs; plantar fasciitis; restless leg syndrome; hypertension; neck pain; low back pain; possible residuals of polio including SI radiculopathy; bilateral shoulder pain; and fibromyalgia, but determined at step three that she did not meet a listing (AR 62-63). The ALJ described the Plaintiff's residual functional capacity as follows:

> …[T]he claimant has the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b) but more than sedentary. The claimant is able to lift and carry 10 pounds occasionally, and 3 to 5 pounds frequently, sit for four hours, stand and walk for four hours, with a sit/stand option changing positions at a maximum frequency of every 30 minutes; she cannot do any crouching, crawling, or climbing; she can do other postural movements only occasionally; she can only occasionally use her hands for fine fingering work; she cannot be exposed to dangerous heights or unprotected machinery, and is limited to simple, routine, repetitive tasks, not performed in a fast-paced production environment.

(AR 63). At the final step, the ALJ concluded that Plaintiff could perform the jobs cited by the vocational expert at the administrative hearing (AR 67). Again, we must affirm this determination unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Initially, we must determine whether the evidence submitted to the Appeals Council, but not considered by the ALJ, dictates a remand. This evidence consists of: (1) a report by Charles Romero, M.D., dated June 25, 2010; (2) an x-ray of Plaintiff's right foot dated July 2, 2010; (3) a

9

letter dated August 18, 2010 from Stairways Behavioral Health; and (4) a letter dated August 18, 2010 from Saint Vincent Health Center (AR 387-393).[4]

When a claimant seeks to rely on evidence that was not before the ALJ, the district court may remand the case to the Commissioner if three requirements are met. *See Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001). First, the evidence must be "new," in the sense that it is not cumulative of pre-existing evidence on the record. *Matthews*, 239 F.3d at 593-94; *Szubak v. Sec. of Health and Human Servs.*, 745 F.2d 831, 833 (3d Cir. 1984). Second, new evidence must also be "material," in that it is relevant to the time period and impairments under consideration, it is probative, and it is reasonably possible that such evidence would have changed the ALJ's decision if presented earlier. *Id*. Finally, "good cause" must be shown for not submitting the evidence at an earlier time. *Matthews*, 239 F.3d at 593. The court demands these three showings be made to avoid inviting claimants to withhold evidence in order to obtain another "bite of the apple" when the Commissioner denies benefits. *Matthews,* 239 F.3d at 595 (citing *Szubak,* 745 F.2d at 834).

Two months after the ALJ's decision in this case, Charles Romero, M.D., performed a neurological evaluation of Plaintiff on June 25, 2010 (AR 388-391). Plaintiff complained of ongoing pain and generalized weakness, stating her problems had been present for greater than five years (AR 388). Plaintiff reported a history of polio as a child (AR 388). Dr. Romero noted that Plaintiff's spinal diagnostic studies showed only mild spondylosis of the lumbar spine and that her cervical spine was normal (AR 390). He further noted that Plaintiff's EMG results revealed bilateral SI radiculopathies (AR 388). On physical examination, Dr. Romero found Plaintiff's strength was within normal limits and her reflexes were symmetric (AR 390). He found her gait was wide-based and that she required a cane for support in performing a four-step turn (AR 390). Dr. Romero formed an impression that Plaintiff's symptoms "appear[ed] to be part of the postpolio syndrome complex" and that her pain "[could] be neuropathic" (AR 390).

---

[4] Having called this material to our attention, we conclude that Plaintiff has requested, albeit implicitly, a Sentence Six remand.

We find that a remand is not required with respect to this evidence. The majority of Dr. Romero's report is not "new" and is merely cumulative of the evidence that was already in the record and considered by the ALJ. Plaintiff's complaints of pain and weakness were previously reported to various health care providers (AR 258-259; 332; 358; 384), and the diagnostic studies Dr. Romero summarized in his report were also reviewed and considered by the ALJ (AR 65-66). In addition, Dr. Romero's finding that Plaintiff's symptoms appeared to be "part of the postpolio syndrome complex" is similar to Dr. Wheeling's finding that her chronic motor changes "[could] be due to previous polio" (AR 307).

The only arguably "new" portion of Dr. Romero's report are his findings that Plaintiff's gait was wide-based and that she required a cane for performing a four-step turn (AR 390). During the time period for which benefits were denied, however, no abnormalities with respect to Plaintiff's gait were reported by her treating physicians. For example, in October 2008, Dr. Hilbert reported that Plaintiff exhibited a normal gait (AR 348). When seen by Dr. Hilbert in March 2009, no abnormalities were observed (AR 359). Dr. Mailliard reported in September 2009 and October 2008 that Plaintiff's gait was normal (AR 313; 317). In addition, Dr. Wyszomierski, the state agency reviewing physician, observed that Plaintiff's gait was normal and there was no evidence that Plaintiff needed to use a cane (AR 295). Dr. Romero's findings therefore are not "material" since they are not an assessment of Plaintiff's condition during the relevant time period. *Szubak*, 745 F.2d at 833 ("An implicit materiality requirement is that the new evidence relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of [a] previously non-disabling condition.").

With respect to the x-ray report of Plaintiff's right foot dated July 2, 2010 revealing a calcaneal spur formation (AR 393), this evidence is neither new nor material and is also merely cumulative of the evidence that was before the ALJ. This condition was revealed in an x-ray dated March 21, 2005 (AR 245) and was considered by the ALJ.

The Stairways letter dated August 18, 2010 stating that Plaintiff attended six counseling sessions between May 18, 2010 and June 30, 2010 (AR 387), and the Saint Vincent letter dated

11

August 18, 2010 stating that Plaintiff attended four physical therapy sessions in August 2010 (AR 392), are immaterial since they do not relate to the time period for which benefits were denied. *See e.g., Harkins v. Astrue*, 2011 WL 778403 at *1 n.1 (W.D.Pa. 2011) (holding that a new evidence remand was not warranted where records dated one month after ALJ's decision did not expressly relate back to relevant period); *Range v. Astrue*, 2009 WL 3448746 at *8 (W.D.Pa. 2009) (records that post-date the ALJ's decision are immaterial since they do not relate to the time period for which benefits were denied).

As the Commissioner further points out, even if the submitted evidence was new and related to the time period under review, there is no possibility that it would have changed the ALJ's decision. Dr. Romero never rendered an opinion with respect to the Plaintiff's functional limitations, and none of the remaining evidence contains any functional limitations that would preclude the Plaintiff from working. *Harkins*, 2011 WL 778403 at *1 n.1 ("Because the records do nothing more than further discuss impairments considered by the ALJ and in no way demonstrate a substantial change in those impairments that would lead to additional work restrictions, there is no reasonable possibility that the records would have changed the outcome of the determination.").

Finally, even if any of the above evidence could be considered new or material, Plaintiff has failed to demonstrate good cause for not presenting it to the ALJ for his consideration. At the administrative hearing, Plaintiff's counsel informed the ALJ that the only records outstanding were from Elk Valley (AR 21). The ALJ held the record open for twenty days, and further informed Plaintiff's counsel that he would be "very liberal" in granting further extensions of time (AR 21-22). Plaintiff did not request that the record remain open in order to obtain additional evidence, nor did she request any further extensions of time in which to submit additional evidence. Post-hearing, Plaintiff's counsel submitted the Elk Valley records and informed the ALJ that Plaintiff had an appointment with a neurosurgeon (AR 163). Plaintiff's counsel specifically requested, however, that the ALJ "proceed with [his] decision" (AR 163). Under these circumstances, we conclude that Plaintiff cannot demonstrate a new evidence remand is

warranted with respect to any of the records. Accordingly, we direct our attention to Plaintiff's substantive arguments relative to the evidence that was before the ALJ.

Plaintiff first argues that the ALJ failed to "analyze the record" in accordance with Social Security Ruling ("*SSR*") 03-1p, 2003 WL 21638062, which provides for the evaluation of claims involving postpolio sequelae. According to *SSR* 03-1p, postpolio sequelae refers to multiple physical and mental disorders that may be manifested by polio survivors many years following acute polio infection. *SSR* 03-1p, 2003 WL 21638062 at *2-3. These disorders may include postpolio syndrome, early advanced degenerative arthritis, sleep disorders, respiratory insufficiency, and a variety of mental disorders. *Id*. at *1; 3. Signs and symptoms of postpolio syndrome may include fatigue, muscle weakness and skeletal deformities such as scoliosis. *Id*. at *3. If the medical findings support a reasonable link between the prior polio infection and the present manifestation of any one or combination of the above disorders, the ALJ should find that the claimant has postpolio sequelae. *Id*. at *2. Thereafter, the claim is evaluated in the same manner as any other impairment:

> Once postpolio sequelae has been documented as a medically determinable impairment, the impact of any of the symptoms of postpolio sequelae, including fatigue, weakness, pain, intolerance to cold, etc., must be considered both in determining the severity of the impairment and in assessing the individual's RFC. The adjudicator must make a comprehensive assessment of the cumulative and interactive effects of all of the individual's impairments and related symptoms, including the effects of postpolio sequelae. …

*SSR* 03-1p, 2003 WL 21638062 at *6.

While the ALJ did not specifically mention *SSR* 03-1p, we find that he functionally complied with its requirements in his evaluation of the evidence. The ALJ found that Plaintiff's "possible residuals of polio including SI radiculopathy" was a severe impairment (AR 62). The ALJ then proceeded to step three and considered Plaintiff's orthopedic and musculoskeletal complaints and other physical conditions in concluding that she did not meet a listing (AR 63). In making this finding, the ALJ found that Plaintiff had not lost the ability to walk effectively, nor had she suffered any significant loss of the use of her upper extremities for work functions

13

(AR 63). The ALJ further found that there were no signs of significant neurological compromise, despite the combined effects of her musculoskeletal conditions (AR 63).

The ALJ also examined the functional effects of Plaintiff's postpolio sequelae in connection with his assessment of her residual functional capacity ("RFC") at step four.[5] The ALJ reviewed the medical evidence of record and noted that Plaintiff "had a history of several musculoskeletal complaints, *including the residuals from polio*, but clinical findings are clearly inconsistent with the claimant's subjective assertions with respect to pain and limitations." (AR 64) (emphasis added). The ALJ explained that "numerous" office notes from Elk Valley Medical Center revealed that Plaintiff exhibited no significant signs of weakness in her upper and lower extremities, and she had normal balance, normal motor examinations, and normal reflexes (AR 65; 236; 263; 313; 348; 359; 385). The ALJ also found that Plaintiff had good range of motion in both her neck and lumbar region with no signs of persistent spasm or weakness (AR 65; 261; 311; 313; 348; 359). The ALJ acknowledged that Plaintiff suffered from tenderness in her feet due to heel spurs, but was able to walk effectively (AR 65; 263; 310-311; 313; 317; 348; 359).

The ALJ also considered the diagnostic studies, noting that x-rays of her neck and lumbar spine were negative, a cervical MRI was unremarkable, and a lumbar MRI revealed only mild spondylosis (AR 65; 251; 331; 364; 367). The ALJ further observed that Plaintiff's left and right shoulder x-rays were unremarkable (AR 65; 330; 386). The ALJ reviewed the opinion evidence, noting that Dr. Hilbert, Plaintiff's treating physician, concluded that Plaintiff was able to work (AR 65). Finally, the ALJ rejected Plaintiff's claims that her impairments precluded her from working because, *inter alia*, she continued to work after her alleged disability onset date, and her subjective complaints were not supported by the objective medical evidence (AR 65-66).

---

[5] "'Residual functional capacity is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3rd Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999); *see also* 20 C.F.R. § 404.1545(a). An individual claimant's RFC is an administrative determination expressly reserved to the Commissioner. 20 C.F.R. § 404.1527(e)(2). In making this determination, the ALJ must consider all the evidence before him. *Burnett*, 220 F.3d at 121.

All of the above findings are supported by substantial evidence, and we find that the ALJ fully complied with his responsibilities under *SSR* 03-1p in evaluating Plaintiff's claim.[6]

The Court likewise rejects the Plaintiff's argument that the ALJ erred in his credibility assessment. An ALJ must consider subjective complaints by a claimant and evaluate the extent to which those complaints are supported or contradicted by the objective medical evidence and other evidence in the record. 20 C.F.R. § 404.1529(a). Such other evidence includes the claimant's own statements, the claimant's daily activities, the treatment and medication the claimant has received, any statements by treating and examining physicians or psychologists, and any other relevant evidence in the case record. *See* 20 C.R.R. § 404.1529(c); *SSR* 96-7p, 1996 WL 374186 at *2. The ALJ as the finder of fact can reject, partially or fully, subjective complaints if he finds them not credible based on other evidence in the record. *See Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974). The ALJ is empowered to evaluate the credibility of witnesses and his determination is entitled to deference by this Court. *See Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983).

The ALJ concluded that Plaintiff's pain and claimed limitations were not as severe as alleged (AR 64). In making this determination, the ALJ found that Plaintiff's claimed limitations were inconsistent with the objective diagnostic studies and clinical examination findings discussed above (AR 65-66). The ALJ noted that Plaintiff's musculoskeletal complaints responded to medication, as well as conservative treatment measures, such as the use of orthotics for her heel spurs (AR 66). The ALJ found it significant that Plaintiff worked after her alleged disability onset date as a cook and a housekeeper, positions that involved significant exertion, including heavy lifting (AR 66). The ALJ found this inconsistent with Plaintiff's claims that she was significantly limited regarding her ability to stand, and that she experienced numbness and tingling in her hands (AR 66). The ALJ noted that Plaintiff testified that she never used drugs not prescribed by her physician, but treatment note entries revealed occasional cannabis usage

---

[6] In a related argument, Plaintiff claims that the ALJ failed to consider the "combined effect" of each of her severe impairments in fashioning her RFC. *See* Plaintiff's Brief p. 9. This argument is meritless. The ALJ's decision reveals that he carefully considered all of the Plaintiff's impairments, in combination, at each step of the sequential evaluation process (AR 63-66).

(AR 66). The ALJ found that despite her claimed limitations, Plaintiff was able to manage her personal needs, read, shop, vacuum and drive her son to school (AR 66). Finally, the ALJ observed that Plaintiff was not compliant with recommended treatment because she was actively pursuing part-time employment and caring for her son (AR 66). All of these findings are supported by substantial evidence and we find no error in the ALJ's credibility determination.

## V.     CONCLUSION

For the reasons discussed above, Plaintiff's Motion will be denied and the Commissioner's Motion will be granted. An appropriate Order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| POLLY A. RAINEY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 11-125 Erie |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

AND NOW, this 31st day of August, 2012, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that the Plaintiff's Motion for Summary Judgment [ECF No. 7] is DENIED, and the Defendant's Motion for Summary Judgment [ECF No. 9] is GRANTED. JUDGMENT is hereby entered in favor of Michael J. Astrue, Commissioner of Social Security, and against Plaintiff, Polly A. Rainey.

The clerk is directed to mark the case closed.

                                      s/ Sean J. McLaughlin
                                        United States District Judge

cm:    All parties of record